IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 08-cv-02774-LTB

CANDACE LOU CUNNINGHAM,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

ORDER
_____

    Plaintiff Candace Lou Cunningham appeals Defendant's (the "Commissioner") final administrative decision denying her claim for disability benefits and supplemental security income under the Social Security Act (the "Act").  Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g).  Oral argument would not materially assist in the determination of this appeal.  After consideration of the briefs and the record, I reverse the Commissioner's decision and remand the case for further proceedings consistent with this Order.

**I.  Statement of the Case**

    Plaintiff applied for disability benefits and supplemental security income under the Act in April of 2004.  Following the initial denial of benefits, a hearing was held before an administrative law judge (the "ALJ") on August 17, 2006.  On October 11, 2006, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  Plaintiff sought review of the ALJ's decision by the Appeals Council and submitted additional evidence for its review.  On October 24, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering this decision the Commissioner's final decision for purposes

of my review.  Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II.  Statement of Facts

### A.  Background

Plaintiff is a college graduate and has also attended paralegal school.  Administrative Record ("AR") 137, 234 & 1007.  Plaintiff was born in 1947 and was 59 years old at the time of the Commissioner's decision.  AR 1006.  In the past, Plaintiff worked as a data specialist and communications manager.  AR 1012.  Plaintiff last worked full-time in April of 2001.  AR 1009.  At the time of the hearing before the ALJ, Plaintiff was working part-time as a clerk, a position that primarily involves filing and copying.  AR 1009 - 1010.  As a part-time clerk, Plaintiff was paid $10 an hour.  AR 1009 - 1010.

Plaintiff alleges that she became disabled beginning August 6, 2003 as a result of, among other things, vision problems, polycythemia vera, clotting disease, chronic fatigue syndrome, a weakened immune system, depression, headaches, ischemia, extropia due to Grave's disease and allergies.  AR 131 & 202.  For several years prior to her August 6, 2003 alleged disability onset date, Plaintiff was treated for Grave's disease, double vision, and depression.  AR 981-95.  After August 6, 2003, Plaintiff received treatment from various doctors at Denver Health Medical Center, including David Ginosar, M.D., for these same conditions, as well as polycythemia vera and extropia.  AR 319-377, 420-564 & 753-960.

Dr. Ginosar completed a medial assessment form dated August 10, 2006 on which he opined that, in an 8 hour workday, Plaintiff could lift and carry up to 10 pounds occasionally; sit up to 3 hours total with the ability to stand for 5 minutes after 1 or 2 hours; not stand or walk at

all; frequently use both hands for reaching, handling, fingering, and feeling but never for pushing or pulling; occasionally balance and climb stairs, ladders and scaffolds; never stoop, crouch, kneel, or crawl; see to avoid hazards; read with visual aids; view a computer screen, and determine differences in the shape and color of small objects. AR 565-67. Dr. Ginosar further opined that Plaintiff should avoid concentrated exposure to moving mechanical parts, operating a motor vehicle, noise, extreme temperatures, and vibrations and all exposure to unprotected heights, dust, odor, fumes, and pulmonary irritants and that Plaintiff could shop, travel, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb a few stairs at a reasonable pace with the use of a single handrail, prepare a simple meal and feed herself, maintain personal hygiene, and occasionally sort, handle and use papers and files. AR 568.

Plaintiff was also treated by Michael J. Davis, Ph.D., a psychotherapist who had 30 sessions with Plaintiff over a period of approximately 16 months. In response to a request that he complete a medical source statement, Dr. Davis opined that Plaintiff had "no ability to work on a sustained basis" and that he "would therefore mark 'extreme' for all the answers regarding limitation on her ability to perform each activity because [Plaintiff] cannot work eight hours in any day, or five days of any week." AR 561.

In 2006, Plaintiff was hospitalized following 5 - 6 episodes of decreased or full loss of consciousness. AR 400-406. Plaintiff's treating physician, Gary L. Cohen, M.D., indicated that he was not completely sure of the etiology of these episodes but "would lean a little bit more toward anxiety than partial seizures." AR 399.

In connection with her application for social security benefits, Plaintiff was evaluated by

a number of other health care professionals, including Brett Valette, Ph.D, W. Bruce Wilson, M.D., and Edward Manring, M.D.  Dr. Valette assessed that Plaintiff had nonspecific mood disorder, depression; history of panic disorder, mild; nonspecific neurological complaints; back pain; vision difficulties; Grave's disease; a history of head injury; psychosocial stressors, moderate; and a GAF score of 60 - 65.  AR 380.  Dr. Wilson performed an ophthalmologic evaluation of Plaintiff and found "no evidence of eye disease except for Grave's affecting lids and ...."  AR 384.  Dr. Manring assessed that Plaintiff had polycythemia vera in good control; a clotting disorder being controlled by Coumadin; fatigue and excessive sleeping due to the polycythemia vera and clotting disorder; dyspnea on exertion; quadruple vision, cause unknown; hypertension, well-controlled; history of Grave's disease under adequate treatment; partial seizure-like spells, unexplained.  AR 390.

Dr. Manring opined that Plaintiff could lift/carry 15 pounds at 500 feet; stand/walk 30 minutes in 6 to 12 blocks slowly (sic); climb one-half flight of stairs without rest; stoop, kneel, push, pull, balance, crawl, reach, feel, or finger without limitation; and that Plaintiff had normal manual dexterity, hearing, speech, communications skills, and travel abilities.  AR 390.

**B. Plaintiff's Disability Hearing**

At the August 17, 2006 hearing, Plaintiff testified that she had double vision in both eyes that made it difficult for her to read and caused headaches; occasionally drove and was able to read street signs; had difficulties writing by hand and using a computer; could do simple math in her head and manage her own money; suffered from chronic fatigue syndrome that required her to sleep a minimum of 12 hours a night in order to function at all; could work on a computer screen for about an hour and read a book for 20-30 minutes before needing a break; suffered

from lower back pain ranging from 2 to 6 or 7 on a pain scale of 1 to 10 though she only experienced pain at a 6 or 7 level a couple of times a month; suffered from right leg pain; saw her primary care physician every 2-3 months; needed to elevate her feet to prevent swelling and for circulation; was on medication and had not had a seizure since May of 2006; described her depression as a feeling of complete hopelessness and that there was no point in doing anything or going on; had 5 or 6 close friends; has 3-5 good days a month when she might go out for a short walk, a cup of coffee, or a burger and do dishes; could lift a gallon of milk and probably more weight; could walk 2-3 blocks at one time; could stand 5-10 minutes at a time; could sit for about an hour at a time; could climb one flight of stairs without resting; and had hearing loss in her right ear. AR 1006-1045.

Deborah Christianson, a vocational expert, also testified at Plaintiff's August 17, 2006 hearing. Ms Christianson identified Plaintiff's work history as computer operator and administrative assistant (AR 1047) and answered five hypothetical questions from the ALJ regarding Plaintiff's ability to work.

The ALJ's first hypothetical question to Ms. Christianson assumed an ability to lift and/or carry 20 pounds occasionally, 10 pounds frequently; sit with normal breaks for 6 hours in an 8-hour day; stand and/or walk for 6 hours in an 8- hour day; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes or scaffolds; hear and understand oral instructions; avoid ordinary hazards; read very small print with reading glasses; view a computer screen; communicate information with and without a telephone; have no exposure to unprotected heights and moving mechanical parts; operate a motor vehicle on an unlimited basis; and have no concentrated exposure to environmental irritants and extreme cold.

AR 1047-48.  Ms. Christianson responded that an individual with those limitations could perform Plaintiff's past work as a computer operator and as an administrative assistant as these positions were performed by Plaintiff and as performed in the national economy.  AR 1048.

The ALJ's second hypothetical question to Ms. Christianson incorporated the same physical limitations as the first one and further assumed that Plaintiff could understand, remember, and carry out detailed, but not complex instructions.  AR 1048-49.  Ms. Christianson responded that an individual with this additional limitation could not work as a computer operator or as an administrative assistant.  AR 1049.

The ALJ's third hypothetical question to Ms. Christianson assumed an ability to occasionally lift 10 pounds and frequently lift less than 10 pounds; sit with normal breaks for 6 hours in an 8-hour day; stand and/or walk for 2 hours in an 8- hour day; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes or scaffolds; hear and understand oral instructions; avoid ordinary hazards; read very small print with reading glasses; view a computer screen communicate information with and without a telephone; have no exposure to unprotected heights and moving mechanical parts; operate a motor vehicle on an unlimited basis; and have no concentrated exposure to environmental irritants and extreme cold.  AR 1049-50.  Ms. Christianson responded that an individual with these limitations could work as a computer operator and as an administrative assistant.  AR 1050.

The ALJ's fourth hypothetical question to Ms. Christianson incorporated Dr. Ginosar's opinions regarding Plaintiff's physical limitations including her inability to stand or walk for any period of time and to sit for a total of 3 hours during an 8-hour workday.  AR 1051.  Ms.

Christianson responded that an individual with these limitations could not work as a computer operator or as an administrative assistant. AR 1051-52.

The ALJ's final hypothetical question to Ms. Christianson incorporated both Dr. Ginosar's opinions regarding Plaintiff's physical limitations and Dr. Davis' opinions regarding Plaintiff's mental capabilities. AR 1052. Ms. Christianson responded that an individual with these limitations would be unable to perform any competitive work activity. AR 1052.

## C. The ALJ's Decision

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 404.1520(a) and 416.920(a). At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 6, 2003. AR 20. At the second step, the ALJ determined that Plaintiff had severe impairments of polycythemia vera, extropia due to Grave's disease, and allergies. AR 20. The ALJ further determined that Plaintiff's additional alleged impairments of hypertension, hyperlipidemia, a non-specific mood disorder, anxiety, a seizure disorder, an inguinal hernia, headaches, and carpal tunnel syndrome were non-severe in nature because they did not significantly interfere with her capacity to perform work activities. AR 20. At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1.

At the fourth step of the sequential process, the ALJ determined that Plaintiff had the residual functional capacity to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday; sit with normal breaks for a total of about 6 hours in an 8-hour workday; never climb

ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; understand oral instructions and communicate information with and without a telephone; avoid ordinary hazards in the workplace; read small print with reading glasses; read ordinary newspaper or book print; and view a computer screen. AR 21. The ALJ further determined that Plaintiff should have no exposure to unprotected heights and moving mechanical parts and no concentrated exposure to environmental irritants and extreme cold. AR 21. In determining Plaintiff's RFC, the ALJ concluded that Plaintiff was not credible and that the opinions of Dr. Ginosar and Dr. Davis regarding Plaintiff's physical and mental limitations were entitled to no weight. AR 24 & 27. Based on the RFC he assessed for Plaintiff, the ALJ concluded that Plaintiff was capable of performing her past relevant work as an administrative assistant and therefore had not been disabled from August 6, 2003 through the date of his decision. AR 28.

### III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton, supra,* 961 F.2d at 1498. I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995). Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be

affirmed. *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

## IV.  Analysis

Plaintiff raises four issues on appeal: (1) whether the ALJ properly considered the opinions of Plaintiff's treating physicians, Dr. Ginosar and Dr. Davis; (2) whether the ALJ properly assessed and considered Plaintiff's impairments at Step 2 of the sequential process; (3) whether the ALJ's findings regarding Plaintiff's credibility were supported by substantial evidence; and (4) whether the ALJ's determination of Plaintiff's RFC was supported by substantial evidence.

### A.  The ALJ's Treatment of the Opinions of Dr. Ginosar and Dr. Davis

Generally, an ALJ gives more weight to the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527(d)(2).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence," it is given controlling weight. *Id.*  When a treating physician's opinion is not given controlling weight, it is still entitled to deference and other enumerated factors must be applied to determine the appropriate weight to give the opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (*quoting* Soc. Sec. R. 9602p, 1996 WL 374188 at *4).  These factors include length of the treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability; consistency; and specialization. 20 C.F.R. § 404.1527(d)(2) - (6).

In all cases, the ALJ must give "good reasons" for the weight given a treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).  The ALJ need not, however, expressly apply each of the enumerated factors in deciding what weight to give a treating physician's opinion so long as the

reasons for the weight given the opinion are clear. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). "In choosing to reject [a] treating physician's assessment, an ALJ may not make speculative references from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir. 2004).

### 1. Dr. Ginosar's Opinions Regarding Plaintiff's Physical Capabilities

In determining that Dr. Ginosar's opinions of Plaintiff's physical capabilities were entitled to no weight, the ALJ noted that Dr. Ginosar assessed significant physical restrictions based on Plaintiff's clotting disorder with documented recurrent venous thrombosis in the legs and lungs that require her to move continuously and back pain that prevents her from stooping, crouching, kneeling, crawling, or lifting and carrying more than 10 pounds. AR 26. The ALJ concluded that this assessment was not supported by the medical evidence since Plaintiff's clotting disorder is "well controlled on prescription medication" and "there is no evidence that she has complained of or been diagnosed with severe back pain." AR 26-7. I must now determine whether the ALJ erred in declining to give the opinions of Dr. Ginosar, who treated Plaintiff regularly over the course of three years, controlling weight and in giving these opinions no weight.

Plaintiff concedes that her clotting disorder is well controlled, but asserts that "[s]imply because a condition is well controlled does not mean that limitations are inappropriate." Although the ALJ recognized that Plaintiff had some limitations as a result of her clotting disorder, he determined that she was capable of sitting for up to 6 hours and walking and/or

standing for up to 6 hours in an 8-hour workday. This represents a marked departure from the assessment of Dr. Ginosar that Plaintiff could sit for a maximum of 3 hours and not stand or walk at all during an 8-hour workday. Peter M. Raich, M.D., a physician in hematology-oncology similarly opined that Plaintiff's clotting disorder would be "a problem with any occupation that requires standing for even part-time during the day." AR 695.

The Commissioner argues that the ALJ's decision to give no weight to Dr. Ginosar's opinion regarding the impact of Plaintiff's clotting disorder was supported by evidence that Plaintiff worked 4 hour shifts 3 times a week as a file clerk throughout most of the time period between her alleged onset date and the disability hearing and engaged in a variety of daily activities that required her to stand and walk. This evidence was discussed in the ALJ's decision though not in the specific portion of his decision addressing Dr. Ginosar's opinions. AR 26-7. I agree that Dr. Ginosar's opinions regarding the impact of Plaintiff's clotting disorder were inconsistent with substantial evidence in the record and therefore conclude that the ALJ did not err in not giving these opinions controlling weight. It does not follow, however, that the ALJ likewise did not err in giving no weight to Dr. Ginosar's opinions regarding the impact of Plaintiff's clotting disorder on her ability to stand, walk, and sit during an 8-hour workday.

The evidence of Plaintiff's daily activities does not constitute contradictory medical evidence necessary to support the outright rejection of Dr. Ginosar's opinions. *Robinson*, *supra*. In citing this evidence as a basis to completely reject Dr. Ginosar's opinions relating to Plaintiff's clotting disorder, the ALJ improperly relied on his own speculative lay opinions of Plaintiff's physical capabilities which are unsupported by the evidence of Plaintiff's daily activities in any event. Evidence that Plaintiff's clotting disorder was "well controlled" on

medication is not patently contradictory to Dr. Ginosar's opinions of its impact on Plaintiff's physical capabilities and likewise fails to support the ALJ's complete rejection of these opinions. I therefore conclude that the ALJ erred in attaching no weight to Dr. Ginosar's opinions relating to Plaintiff's clotting disorder and that further consideration of the appropriate weight to attach to these opinions is necessary.

With respect to Plaintiff's back pain, there is substantial evidence in the record to show that Plaintiff experienced some degree of back pain. AR 493 & 533. This evidence does not, however, conclusively establish that this pain was "severe" as assessed by Dr. Ginosar. AR 565 & 567. In fact, during her testimony before the ALJ, Plaintiff acknowledged that her back pain began when she was working full-time as a data specialist 4-5 years before her alleged disability onset date and that her pain level, with medication, typically did not exceed 2 on a scale of 1 to 10 though it was aggravated by certain activities. AR 1021-23. Under these circumstances, I conclude that the ALJ did not err in concluding that Dr. Ginosar's opinions regarding the impact of Plaintiff's back pain were not well-supported by the medical evidence and were inconsistent with substantial evidence in the record and therefore not entitled to controlling weight.

As to the ALJ's decision to give no weight to Dr. Ginosar's opinions relating to Plaintiff's back pain, Plaintiff's testimony on this issue does not constitute the requisite contradictory medical evidence. Additionally, consistent with Dr. Ginosar's assessment, Plaintiff testified that certain activities aggravated her back pain. AR 1023. It thus appears that the ALJ rejected Dr. Ginosar's opinions relating to Plaintiff's back pain based upon his own speculative lay opinions of the severity and impact of this pain. The ALJ therefore did not follow the correct legal standards in attaching no weight to these opinions. Although the ALJ

did not significantly deviate from the restrictions that Dr. Ginosar assessed on the basis of Plaintiff's back pain, further consideration of the appropriate weight to attach to these opinions is necessary.

### 2. Dr. Davis's Opinions Regarding Plaintiff's Mental Capabilities

In determining that Dr. Davis's opinion of Plaintiff's mental abilities was entitled to no weight, the ALJ noted that Dr. Davis provided no objective medical signs or findings to support his conclusions; that his views were based on his assessment of Plaintiff's physical impairments on which he was unqualified to render an opinion; and that his assessment was contradicted by the opinion of Dr. Valette and Plaintiff's medical records. AR 27. I must now determine whether the ALJ erred in declining to give the opinions of Dr. Davis, who treated Plaintiff every other week for approximately one and a half years, controlling weight and in giving those opinions no weight.

"[A] psychological opinion may rest either on observed signs and symptoms or on psychological tests." *Robinson,* 366 F.3d at 1083 (*citing* 20 C.F.R. Subpart P, App. 1 § 12.00(b)). The ALJ's rejection of Dr. Davis's opinions on the basis that there were no supporting "objective medical signs or findings" is therefore without merit.

The ALJ did not elaborate on his conclusion that Dr. Davis's opinions were of no value because they were based on his assessment of Plaintiff's physical impairments, and it is difficult to reconcile this conclusion with the assessment form completed by Dr. Davis and the related correspondence. AR 560-64. Although Dr. Davis references Plaintiff's physical conditions and symptoms, he primarily does so in the context of addressing how they effect Plaintiff's mental state. Dr. Davis does not delve into the specifics of Plaintiff's physical impairments, and it is

beyond dispute that Plaintiff suffers from some physical impairments.  Dr. Davis identified "fatigue, lack of sleep, depression, anxiety, [and] infections (see medical reports)" as the basis for his assessment of Plaintiff's mental capabilities, AR 563, leaving it unclear whether Dr. Davis would have assessed the same limitations based solely on Plaintiff's non-physical impairments.  The controlling regulations require the ALJ to seek additional evidence or clarification from a medical source when the report from that source contains an ambiguity that must be resolved.  *See* 20 C.F.R. § 404.1512(e)(1) (2001).  Rather than rejecting Dr. Davis's opinions because they were based on his assessment of Plaintiff's physical impairments then, the ALJ should have sought additional information from Dr. Davis to determine what his opinions of Plaintiff's mental capabilities would be based solely on her non-physical impairments.

Next, the ALJ attached "great weight" to the opinions of Dr. Valette, the consultative psychologist who saw Plaintiff on one occasion more than a year before she began treatment with Dr. Davis, notwithstanding the fact that the opinions of a consultative examining physician are generally entitled to less weight than those of a treating physician because of the treating physician's unique perspective of the medical evidence that cannot be obtained from reports of individual examinations.  20 C.F.R § 404.1527(d)(2).  The rationale behind giving less weight to the opinions of consultative examining physicians is readily apparent in this case since Dr. Davis distinguished his opinions based on Plaintiff's "good days," "average days," and "bad days."  AR 560-64.  On good days, Dr. Davis opined that Plaintiff had zero to mild restrictions based on her mental capabilities which is consistent with Dr. Valette's opinions based on a single examination on what Dr. Davis may have classified as a "good day."  AR 378-81; 560-64.  Additionally, since Dr. Valette did not specifically address whether Plaintiff had any limitations

as a result of his assessment of her mental capabilities, Dr. Davis's opinions of Plaintiff's limitations based on the type of day she was having are not inconsistent with Dr. Valette's opinions.

Finally, the ALJ did not cite specific medical records in support of his conclusion that Plaintiff's mental impairments have been well controlled on medication since February of 2005, and there is evidence to the contrary. AR 399, 424, 436 & 450. In any event, Plaintiff's medical records from Denver Health are generally very brief and address all of Plaintiff's impairments by physicians with specialities other than psychology.

Under these circumstances, I conclude that the ALJ erred in not giving controlling weight to the opinions on Dr. Davis because his stated reasons for rejecting these opinions fail to establish either that they were not well-supported by medically acceptable techniques or were inconsistent with other substantial evidence. Because further clarification of the basis for Dr. Davis's opinions is warranted, however, I do not decide that these opinions are entitled to controlling weight as a matter of law but only that further proceedings are necessary to determine the appropriate weight to attach to these opinions. In the absence of clearly contradictory medical evidence, however, the ALJ erred in giving no weight to the opinions of Dr. Davis.

**B. The ALJ's Assessment of the Severity of Plaintiff's Impairments**

At Step 2 of the sequential process, the ALJ must determine whether the claimant has an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities such as walking, standing, sitting, seeing, hearing, speaking, and understanding simple instructions. 20 C.F.R. §§ 404.1520(c) & 404.1521(b).

More specifically, the ALJ must "consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004). The burden of proof at Step 2 is on the claimant but this burden has been described as *de minimus. Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir. 1997).

Here, the ALJ determined that Plaintiff had severe impairments of polycythemia vera, extropia due to Grave's disease, and allergies and non-severe impairments of hypertension, hyperlipidmeia, a non-specific mood disorder, anxiety, a seizure disorder, an inguinal hernia, headaches, and carpal tunnel syndrome. The ALJ did not specifically identify chronic fatigue syndrome/fatigue, vision problems, and depression as impairments from which Plaintiff suffers in that portion of his decision addressing Step 2 of the sequential process, and Plaintiff asserts that the ALJ's failure to do so demonstrates that he did not consider the effect of these conditions on Plaintiff's ability to perform basic work activities. Plaintiff further argues that there is no indication that the ALJ considered the cumulative effect of Plaintiff's identified and non-identified impairments on her ability to perform basic work activities.

In response, the Commissioner argues that because the ALJ discussed all of Plaintiff's alleged impairments, including fatigue, vision problems, and depression, and considered them together in determining Plaintiff's RFC at Stage 4 of the sequential process (AR 22 - 27), his failure to do so at Step 2 was, at most, harmless error. After careful review of the ALJ's decision, I agree that any failure by the ALJ to consider all of Plaintiff's impairments in combination at Step 2 of the sequential process was harmless since it would not have altered the ALJ's ultimate conclusion that Plaintiff was not disabled. *See Fischer- Ross v. Barnhart,* 431

F.3d 729, (10th Cir. 2005) (an ALJ's findings at other steps of the sequential process may provide a basis for upholding conclusions at a different step).

**C. The ALJ's Assessment of Plaintiff's Credibility**

Credibility determinations are the province of the ALJ and will be upheld provided that they are supported by substantial evidence. *Diaz v. Sec. of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir. 1991). Plaintiff challenges the ALJ's determination that she was not credible on the basis that this conclusion was not supported by substantial evidence. In support of this argument, Plaintiff cites numerous errors, omissions, and misstatements in the ALJ's discussion of Plaintiff's testimony at her disability hearing. Among other things, the ALJ failed to note the duration and infrequency of Plaintiff's daily activities. Consideration of these relevant factors substantially undermines the ALJ's conclusion that Plaintiff's daily activities are inconsistent with her testimony regarding her symptoms and limitations. For instance, the ALJ states that Plaintiff is able to do her dishes and wash her clothes but fails to note that Plaintiff testified that she does the dishes sporadically over the course of several hours with breaks and only does laundry every 6 to 8 weeks. AR 1039.

As pointed out by Plaintiff, additional errors, omissions, and misstatements abound throughout the ALJ's discussion of Plaintiff's testimony at the disability hearing. Furthermore, Plaintiff's testimony regarding her symptoms and limitations is largely consistent with the opinions of Dr. Ginosar and Dr. Davis to which the ALJ improperly assigned no weight as previously discussed in this Order. Under these circumstances, I conclude that the ALJ's determination that the claimant was not credible is not supported by substantial evidence in the record and that remand is necessary to re-assess Plaintiff's credibility in light of Plaintiff's actual testimony and the properly weighted opinions of her treating physicians.

### D. The ALJ's Assessment of Plaintiff's RFC

"[T]he ALJ, not a physician, is charged with determining a claimant's residual functional capacity from the medical record." *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004). Nonetheless, the ALJ's determination of a claimant's RFC must be supported by substantial evidence in the record. *Castenello, supra.*

Here, the ALJ's determination of Plaintiff's RFC is necessarily flawed as a result of the errors previously cited in this Order. Specifically, the ALJ's failure to attach any weight to the opinions of Dr. Ginosar and Dr. Davis regarding Plaintiff's physical and mental capabilities resulted in an RFC determination that differs dramatically from the opinions of these treating physicians. In particular, the ALJ concluded that Plaintiff was capable of standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday despite Dr. Ginosar's finding that Plaintiff was incapable of standing and/or walking for any period of time during an 8-hour workday. This determination is also unsupported with Plaintiff's daily activities, including her part-time work consisting of 4-hour shifts. The ALJ's questionable assessment of Plaintiff's credibility likewise undermines the evidentiary support for his determination of Plaintiff's RFC. Accordingly, on remand Plaintiff's RFC must be re-assessed in light on the additional consideration given to the opinions of Dr. Ginosar and Dr. Davis and Plaintiff's credibility. On remand, clarification of Plaintiff's mental RFC should also be provided since it is unclear if the ALJ determined that Plaintiff was capable of understanding, remembering, and carrying out complex as opposed to simple or detailed instructions, which the vocational expert deemed a significant distinction in Plaintiff's ability to perform her past work. AR 1047-49.

## V. Conclusion

Because the ALJ made findings that were not supported by substantial evidence and committed legal error, IT IS ORDERED that the Commissioner's decision is REVERSED and the case is remanded to the Commissioner for further proceedings consistent with this Order. It is further recommended that the Commissioner assign the case to a different ALJ for all further proceedings.

Dated: January __7th__, 2010 in Denver, Colorado.

                                        BY THE COURT:

                                          s/Lewis T. Babcock  
                                        LEWIS T. BABCOCK, JUDGE